The second case before us this morning is 17-7056 Womble v. Chrisman. Counsel. Good morning, Your Honors. Julian Ellis on behalf of Mr. Joseph Womble, and may it please the Court. To incarcerate is to take away a person's ability to provide for himself. It is for this reason that the Supreme Court has repeatedly said that it is the State's responsibility to provide inmates with those minimal civilized measures of life's necessities. Here that responsibility was assumed by the defendants who were responsible for Mr. Womble's correctional facility. I want to make myself clear from the outset. Mr. Womble's lawsuit is not about an all-you-can-eat buffet. An all-you-can-eat buffet. It's about the constitutional minimum, nutritionally adequate food. This appeal centers on whether sustained rationing, for instance, a slice of bologna and a roll for lunch, states the constitutional violation. Indeed, Mr. Womble filed his suit after receiving these small portions in spoiled food for four months, which persisted well beyond the filing of his initial complaint. Let me understand this. Is there any weighting between those two things? I mean, they're discrete things. I mean, you could have a claim where you're claiming that I got small portions, therefore they were constitutionally inadequate, full stop. Or you can have a claim where you're saying that I got spoiled food, so I couldn't eat it. In other words, it wasn't really a portion at all because it was spoiled. I mean, is there any weighting in the way that he is framing this claim as it relates to those two, or any particular one that is the cause for grievance? I mean, look at his complaint. It's not always entirely clear whether we're talking about spoiled food, whether we're talking about small portions, what? Not in this instance, Your Honor. I think they are one and the same. They all derive from the defendant's order to ration food. And in paragraphs four and five of his amended complaint on supplemental record 20 and 21, he talks about the continuous nature of that. He said the spoiled food was regularly served on a continuous basis, and this is in November of 2015, and the ration portions had continued at that point. And so I think it all derives from the same underlying act, that is I get that. But I mean, the last thing you said, spoiled food served regularly, is, and I'm not trying to say he can't pursue both. All I'm trying to say is that one could conceivably have a different view of this case if we're saying all I did was get one piece of bologna and bread at lunch, or all I got was one piece of bologna and bread that was spoiled, so I couldn't even eat that. You see what I'm saying? I do see what you're saying, Your Honor. But in this instance, I believe it's all viewed under the same ambit. We asked the court that reversed the district court's dismissal order for two reasons. One, the district court erred when it found the defendants didn't personally participate in the alleged Eighth Amendment violation. Here, the defendants personally ordered the food rationing. And two, the district court erred when it found the defendants weren't deliberately indifferent to his Eighth Amendment rights. Mr. Wommel repeatedly informed them of the adverse health risk associated with their policy, and they disregarded those risks. Regarding personal participation, we really view this issue as one of a framing error. The court's decisions in Dodd's and Fogarty specifies that it's personal participation in the constitutional violation as alleged. And we're at a 12B6 situation here. That's correct, Your Honor. And so the constitutional violation as alleged, as Mr. Wommel has pled, is food deprivation. He pled that defendants initiated a sustained policy to ration food in response to the 128 new inmates. And that is the constitutional violation. So in our view, the district court was really answering another question when it was examining whether the defendants had any part in the decision to move the additional inmates to the facility. Indeed, if you look at the district court's decision in the first motion to dismiss, deciding the first motion to dismiss, the district court actually framed the constitutional deprivation correctly and found that the governor and the higher-ups at the DOC hadn't personally participated. In the second dismissal order, the court changed course, moved back from an abstract level, looked at the decision to move the inmates, and found there was no personal participation on behalf of these defendants. Move the inmates. We're talking about a food deprivation claim, right? And the defendants we're talking about are the wardens. That is correct. Okay. So the governor has nothing to do with what we're talking about now, right? That's correct. Not as to his claims against these defendants. All right. All right. As it relates to these defendants. Let me ask you this. As it relates to the participation claim, you could derive participation from the ordering of the act, arguably. It seems to me, what do you think about the notion that at the point where in the amended complaint he says he told these two defendants about the rationing, about the spoiled food, the lack of food, at that point, they allowed that practice to continue, arguably. So irrespective of whether they ordered it, could they not be deemed to have participated as a supervisor at that juncture in allowing it to continue? Absolutely, Your Honor. And there's several points in which they were informed. They were informed through the internal grievance process. He also pled in his amended complaint that he spoke to the defendants. And they were also informed at the time, in September of 2014, when he filed a federal lawsuit challenging this. And so, certainly. At the time he found the federal lawsuit, the whole thing is irrelevant, right? I mean, the federal lawsuit is about whether they had participation. But the, Your Honor, the rationing continued after. Yeah, but we're talking about the rationing that he alleged in his amended complaint, right? That's right, Your Honor. Okay. But if they continued to ration food and acquiesced, even after having knowledge through the form of a federal lawsuit, it just further bolsters our claim. Well, that's not within the scope of the complaint, right? The complaint's not talking about their knowledge derived from the federal lawsuit that is talked about in the complaint. I think it's part of the calculus, Your Honor. Calculus for what? The calculus in determining whether they were deliberately indifferent. Well, the complaint speaks to his deliberate indifference based upon their knowledge of the conditions as he reported it to them in the jail. That's correct. That is the deliberate indifference we're talking about. And that, in and of itself, is enough. Okay. Now, you alluded to the grievances. Are you relying upon the Martinez reports? I mean, the district court didn't. I mean, why should we be talking about that now? I'm relying, first and foremost, on the amended complaint in paragraphs eight, nine, and ten. I am also, in our briefs, we talk about the Martinez report because the Martinez report is fully consistent with the positions Mr. Wamble pled in his amended complaint. But this is on 12b-6. It is on 12b-6, Your Honor. And we believe, even if there are facts, Your Honor, that are consistent with the facts as alleged in his complaint, in the Martinez report, we believe the court can construe those facts in his favor. And I don't believe there is any pleading deficiency here. And under what rubric would we be doing that? I mean, the Martinez report is not attached to his complaint. It's not a part of his complaint. And 12b-6, I mean, generally, that's done on summary judgment, wouldn't it be? One of the court's hall decisions, we already looked to the Martinez report to determine whether the policies that an inmate has alleged to be violated is consistent with what's alleged in the complaint. It'd be no different than looking to facts in the Martinez report and construing those in the pleader's favor. Now, what Hall says you can't do as a lower court is look to the Martinez report, construe facts against the pleader, or decide issues of material effect through use of the Martinez report. But either way, Judge Holmes, I think the amended complaint as supplemented gets us across the plausibility threshold. Do you think the amended complaint as not supplemented gets you across? I do, Your Honor. And let me ask you about that. Let's assume, in some case, best case scenario for you, you win based upon the amended complaint. There's a separate issue, I take it, as to whether the court should have allowed you to supplement and add that supplemented matter. Do we even have to reach that if we determine that the court erred on the 12b-6 issue in denying relief on your amended complaint? If the court finds that the amended complaint states a claim for relief. Yes. As to all of his claims. I'm here arguing only the food deprivation claim. Then you don't have to reach. You are only arguing the food deprivation claim, and that's the only thing that's before us right now. That is correct. Okay. That is correct. So I'm asking you, if you were to prevail on the amended complaint, court erred and deny in granting 12b-6 on your amended complaint on the food deprivation claim, is that it for us? Do we have to do anything else? No, Your Honor. Okay. Thank you. And so, as I previously said, once the issue is properly framed, the personal participation component easily falls into place, and then we're looking at deliberate indifference. The lower court's decision on deliberate indifference is contained in a single paragraph, two sentences. I think it was animated by the reframing issue of looking at this as an overcrowding case. But looking at the knowledge, Judge Holmes, as our dialogue just revealed, the defendants had knowledge. So the only remaining issue is whether they disregarded the risk. And I believe you can look at the continued nature of the rationing, even once they had knowledge of the risk, to Mr. Womble and the other inmates, to infer that there's disregard here. You can look at the amended complaint, paragraph seven and eight, where he informed Defendant Sharp. Defendant Sharp responded, you're lucky you even get food. I believe you can also look at the supplemental complaint, or supplemental pleading, where lieutenants and captains at the facility warned the defendants about the adverse effect of inmates' hunger, and they responded that it's going to be that way for a while. Taken as a whole, and under the farmer standard, we've easily created a fact issue for summary judgment, and certainly plot enough for 12B6 grounds. And if the court has no further questions, I'm going to reserve the balance of my time for rebuttal. Thank you. Your Honors, may it please the court, Charles Dixon appearing for Tommy Sharp and Jerry Christman. The issues before this court really involve two questions. One, was the amended complaint sufficient? Two, did the court abuse its discretion in denying the motion to supplement the original pleading? And do you agree that if, perhaps not out of the universe of possibility, but if you lost on one, do we have to reach two? I would say no, Your Honor, because that would be sufficient. The lawsuit would go forward to the next stage. We do not think it's appropriate to pull in all the facts that have been inserted in the briefing that were contained in the Martinez report, for two reasons. One, the Martinez report was done based on the original complaint, not the amended complaint. In the original complaint, there was... What does the Martinez report have to do with the face of the pleadings? We would contend it has nothing to do with the face of the pleadings, Your Honor. But it's covered in significant ways in the briefing by the appellant, and so we want to make it clear to the court our position is it shouldn't be considered. So if you carve out those things, you're left with the amended complaint. And if you isolate the analysis that the court undertook on the amended complaint, I would reframing of the issue to this overpopulation contention that the appellant has. In the court's opinion, the court cited to the allegations in the amended complaint, he referred specifically that the appellant had alleged that he was sick because of the rations, portions, and the spoiled food, and the infestation of the cockroaches. And he refers to the amended complaint in that. So the court drew out the little bit of allegations that exist in the amended complaint. There weren't repeated notice to the warden and the deputy warden at the time. At the time that the amended complaint was filed, in fact, they were no longer at that facility. So we've got a period of time which the appellant heavily relies on where there was a 17-pound weight loss. And we would submit without more information from the plaintiff that maybe creates a possible claim but not a plausible claim. And the reason for that is because weight loss and whether it's unhealthy is relative to your overall size and health condition. Well, he has more. He said he got sick. He said the food was spoiled so he couldn't eat it. And so I don't think it takes a great leap when you're construing the complaint in light most favorable to the plaintiff to pursue that weight loss to have some connection to the fact that he couldn't eat the food and there wasn't a lot of it, right? Well, the rationing he attributes, his basic factual allegation is that he lost weight. He never says he didn't eat the food. He says he got sick, right? He says he got sick. And if you look at the amended complaint, he got sick one time. When you get to the supplemental pleading, the effort to supplement his pleading, it's a total of four times, one of which likely includes the original one. So we have four instances where he got sick. Okay. So he has spoiled food and if he doesn't eat the food, he's starving. If he eats the food, yes, he got sick once, but he's still eating spoiled food. I mean, it's just, you know, there was a panel case where I was on where the person spit in the food or he said he was going to spit in the food and the inmate didn't eat the food. Granted, you know, here we don't have that explicit allegation, but why isn't that spoiled food problematic? Well, for two reasons with respect to these defendants. Yes. They're the deputy warden and the warden. His allegations that they were aware that there was any spoiled food are one conversation. It may have been in person. I don't know. Isn't that why we have trials to flesh out stuff like that? Well, I think the reason we have Iqbal and Twombly is to make sure that we need to have a trial and flesh out those types of issues. And here you have one communication arguably with Deputy Warden Sharp and sort of a conclusory allegation that Warden Christman knew about these things. I thought paragraph 10 of the amended complaint, he talked to both of them. He said he talked to them. He said the food was spoiled. I didn't have enough food. It made me sick. And then he references cockroach infestation or something of that sort. I'll pull it up again if I need to. But what else do you need? Well, I think it needs to it needs that somehow needs to relate under the under the appropriate standards to that would disregarding that would put him at a serious health risk. And isolated incidents of spoiled food or bugs in the food isn't the type of substantial injury to him. He had he had a stomach. He had some stomach pain. That's what his allegations are. He has a couple of visits to the medical provider. His allegation was not isolated. His allegation was I think he used the word regularly. And I mean, so there was no allegation that this was an isolated incident. Well, Your Honor, I don't disagree with you. He uses that term. He also in other places uses several other frequently. The the the issue is, is how did that the sickness part I do believe is different than and can be analyzed differently than the weight loss. I don't think he's established without more information about his overall makeup. I mean, he was he's five nine. So 220 pounds is obese. He was on a special diet for health. Presumably, when you're on the special diet for health, one of the components of that may be that you receive fewer calories. Are you suggesting the spoiled food was part of the special diet? No, Your Honor. No, Your Honor, I'm not. What I'm suggesting is, is that he has one allegation that he talked to the warden. Well, he's a he's a pro se individual. Now, what are we expecting of him and how do we look at his pleading? Well, I think you the standard is, is that you give liberal room and that you take well pled allegations is true. Take allegations is true. Yes. Yes, Your Honor. And so his allegation is, is that he talked to Warden Chrisman and Warden Sharp one time and told him that he was told them that the inadequate quantity of food and the occasional spoiled food was causing him to lose weight at 17 pounds is his allegation. Interestingly, at his amended complaint, the 17 pounds was in the first three months. He only loses 21 pounds total by the time the amended complaint was was filed. One doesn't have to say that his losing weight is determinative. I mean, that doesn't have to be just positive. And I'm looking at paragraph 10. He says I were they were informed by the plaintiff, Sharp, Chrisman and Petoskey, that he was getting sick from the food because of the rationed food portions and the spoiled nature of the food and the infestation of cockroaches in the kitchen. He informed them that he informed them all of these things. Now, that wasn't a quote. But I mean, but the point is he he informed them of all of these things, including the fact that he was getting sick. What else does he need to do? Well, your honor, the that that is likely to happen, by the way, in a prison setting that that some spoiled food would be served. I mean, that's sort of subjective as to what spoiled food is. But he relates to things he's getting. If he's not eating the food because it's spoiled, he's getting not a sufficient amount of calories. He would argue if the food quantity is insufficient, those are two different things. And he collapses them together and says, I told them about these two things. There's there's nothing in the record on the amended complaint that the wardens knew that he had reported the sick call. Assuming this happened in person, they could look him right in the eye and see, does this person look like he is had a deficient diet or does he look like someone who's in a relatively healthy condition? If he puts them on notice that that the food is inedible and I'm getting sick, they are the wardens of this facility and I'm focusing on them right now. They're the wardens of the facility. Doesn't that put them on notice that there is a problem? Let's assume for the moment, even if you back out the policy, he ordered them to ration, the wardens ordered them to ration. At that point, they run the place. And they and I think that's a natural inference from being a warden. They run the place. Why didn't that put them on notice to do something? And he then can and he suffers harm as he alleges in his amended complaint as a consequence. Well, Your Honor, I would say two things about that. One would be the the allegations about a policy being created relate to rationing food, which in and of itself doesn't say anything and doesn't provide any inference that spoiled foods being served. And the inadequate food portion is it is primarily directed at this policy of rationing. You have another defendant in this case that was dismissed that was actually the food service manager. That person has the day to day responsibilities of assuring that the adequate diet is provided. There's no I believe in the record, he says that he had a conversation in May or June and that one sickness sick call visit was in early May, shortly after he says this policy was enacted. By September, he's no longer experiencing any significant weight loss. That has to be there has to be an inference drawn from that. Where do you get these facts from? That's not in his amended complaint that he amended complaint. It talks about when he lost various pounds. Well, he says he sets time frames. He says he lost 17 pounds from May to the filing of his complaint. And he says at the time he files his amended complaint, he's down to 199 pounds that he started at 220 on May of 2014 and to 199 in September of 2015, which was a couple of months before he filed his amended complaint. OK, so if you if you accept is true that that 17 pounds was prior to his original complaint being filed, then the remaining four pounds necessarily have to be over the next year, over a year. And so you have weight loss, three to three, three and a half pounds for three months and then a quarter of a pound going forward for after the lawsuits filed. And there has to be an inference. And that inference is that that something happened. It certainly should not weigh against my two clients that there's an inadequate diet if his weight loss is relatively stabilized, a third of a pound a month. I mean, that's that's not a significant risk. Well, you're asking us not to make determinate to the weight loss issue and then you're leveraging on it. I mean, if you even if you back out the weight loss thing for a moment and say, all right, I they OK, these are the allegations. They ordered the food service person to ration food. The rationing of food was in it was inadequate, resulted in me receiving inadequate calories. And then as a consequence, I have a claim because I've been harmed. OK. And even if you don't have any specific calculation as relates to how much weight you've lost, if his allegation is you didn't give me enough food to survive. Tell me what we're what more does he need to do? Well, you know, I was I was let's say he said I lost significant weight, I lost a lot of weight, period, a beginning weight, a height and understanding of what his overall health was. I mean, there there are there are circumstances where, for example, if he was 220 pounds, he was 50 pounds beyond his healthy weight. Well, going back to Judge Kelly's point, why doesn't why don't we just sort out why didn't all that stuff, the appropriate stuff for sorting out that summary judgment or in trial? I mean, what he's saying right now is he's identifying the thing, the conduct. OK. He's identifying the fact that these actors supposedly knew about the conduct. And then he's saying I'm harmed as a result of the conduct. That's in a complaint. If we take all those allegations, it's true. Why don't we sort out later how high, how tall he was, whether he was in good condition and that that that point about the fitness diet he was on that was in the Martinez report. That's not in the complaint. Right. Well, he actually does allege, I think, in the complaint, in his amended complaint, that he was on a special diet, a diet for health. And if I'm incorrect about that, then so forth. But but the the at its base level, you don't have a constitutional violation unless you're in deliberate indifference to a serious health need. And that's the that's the hurdle he has to cross over. So if he had put serious in his complaint, it would have been OK. No, Your Honor, I think he would have to put forth facts. You're asking an awful lot to be in a complaint. You're going to go to Texas where they do factual, factual pleading for a pro se litigant in jail to scribble out a complaint. And you're expecting I don't know what you're expecting. I'm expecting more, Your Honor. I will. I'll submit to that. I think that more is possible. This is within his knowledge base. And in the supplemental or effort to supplement his pleading, he actually attempts to add more. Thank you. Your Honor, we would ask that you affirm lower court. I have just two brief points. First, simply to your question, Judge Kelly, a forced diet is not a part of the penalty that criminal offenders pay for their offenses against society. And two, the dialogue that you just had with my colleague back and forth about the facts of this case is properly had before the district court. As you said, Judge Kelly, this is something for trial. And that's what trial courts are in a position to do, not in reviewing a 12B6 order. And if the panel has no further questions, I'll yield the balance of my time. Thank you, counsel. At this time, we will have one more case to hear, and I think we're going to adjourn for the moment and close the courtroom.